## POOL v. REID.

1. A defendant in execution, may sell articles exempt by law from sale by execution, after the execution comes to the sheriff's hands, and convey a good title to the purchaser. But if the thing received as an equivolant, or in exchange, is not also exempt from levy, or sale, it may be levied on.

Error to the Circuit Court of Walker. Before the Hon. Samuel Chapman.

THIS was an action of trespass *vi et armis* by plaintiff against defendant in error. It appears that the defendant, as sheriff of Walker, levied on a pair of oxen, in the possession of the plaintiff, under an execution in his hands, against the plaintiff and another person, whose name is not mentioned in the record, as the property of the latter. The defendant in execution, as whose property, the oxen were levied on, whilst in his possesion, had no other oxen, nor had he a work horse, or mule. During the time the execution was in defendant's hands, this other person sold the oxen to the plaintiff, who was in the same predicament as to goods and chattels, with his vendor.

Under this state of facts, the court charged the jury, that the oxen were subject to levy and sale, and that the plaintiff could not recover. To this charge the plaintiff excepted, and now assigns it as error.

EARNEST & WILCOX, for plaintiff.

T. M. PETERS, for defendant.

COLLIER, C. J.—It is provided by the act of 1833, " that one work horse, mule, or pair of oxen, one horse or ox cart, &c." shall be retained by, and for the use of every family in this state, free and exempt from levy and sale, by virtue of any execution, or other legal process." Clay's Dig. 210 § 47. The act of 1843, declares, that in addition to the property then exempt by law, from execution, for the use of every family in this state, upon all debts thereafter to be contracted, "forty acres of land (for the purposes of cultivation, not to exceed in value four hundred dollars, to be valued by three disinterested free holders, to be summoned by the sheriff, for that purpose, in case of a levy) shall be, and inure to the use and benefit of permanent, and settled families:" *Further*, "When any homestead shall be sold by the owner, it shall be subject to the payment of every judgment against him, or her, at the time of said sale." Clay's Dig. 210 § 48,49.

We have had occasion to consider the act of 1833, in quite a number of cases, and have said, that it "was doubtless intended for the benevolent purpose, of enabling the head of a family to support, and at the same time, contribute to the comfort and convenience of those of his own household, who are dependent on him." To carry out this intention, we have held that it should receive a liberal, rather than a strict construction. Noland v. Wickham, 9 Ala. 169. See also Allen v. Mannasse & Mosely, 4 ib. 555; Abercrombie v. Alderson, 9 ib. 981. In Jordon v. Autrey, 10 Ala. Rep. 276, it was decided, that a party who has pointed out property, which is exempt from levy and sale, by the act of 1833, to an officer having an execution against his goods and chattels, and executed a forthcoming bond, is not estopped from objecting to the sale, and claiming the privilege, to which a poor debtor is entitled ; especially if the plaintiff in execution, or some third person, is not prejudiced by the implied waiver of the exemption, as indicated by the direction to levy. So we have determined, that the exemption provided by the act applies, whether the "family" is stationary, or removing from place to place, and although its head may intend to abscond from one part of the state to another ; it is questioned, whether a different rule would be applicable, even if the intention was to abscond beyond the state. Davis v. Allen 11

Ala. Rep. 164. In the State v. Johnson, 12 Ala. Rep. 840, in considering the nature of the legislative exemption, we held, that the defendant in execution, of the class provided for, might defend his possession, by the employment of such reasonable force as is necessary, even against an officer armed with process, directing the seizure of his goods and chattels. It was said to be " the intention of the the legislature, that these articles of prime necessity, for the comfort of the family, should be kept inviolate for its use, and it would, in a great measure, defeat the object of the law, if the defendant was required to submit to such a levy, and seek redress against the officer by action." So we have decided it to be a violation of duty, for a sheriff to levy on the only work horse of a defendant who came within the statute, and that a bond to indemnify the sheriff for selling the horse was illegal and void. Renfro v. Head, 11 Ala. Rep. 23. In Davis v. Allen *supra*, we determined, that the act of 1843, which secures to " permanent and settled families," forty acres of land, and makes it liable, if sold, to all pre-existing judgments against the debtor, was entirely distinct in its provisions, from the preceding enactment; and did not in any manner limit its operation.

It is clear, from these citations, that a *fieri facias* does not operate a lien, from the time of its delivery to the sheriff, upon the "goods and chattels" of the defendant, which are "exempt from levy and sale, by virtue of an execution, or other legal process." Such was the predicament of the oxen, which were levied on and sold, while the property of one of the defendants in execution, and afterwards when they were purchased of him by his co-defendant, the plaintiff in this action. The statute, we have seen, does not inhibit an execution debtor from selling, the *exempted property*, and this court cannot declare that such a restriction exists ; if, however, he makes a sale, or other disposition of it, it would be allowable to levy on what is received as an equivalent, if it can be reached, and does not belong to the *same category*.

By disposing of the oxen, after the *fieri facias* was placed in the sheriff's hands, the defendant who then owned them, at least indicated that he did not intend to yield them up, to be sold by the sheriff. The sale was an act antagonistic,

and tends strongly to show, that he made no concession to the interest of the plaintiff in execution.

The plaintiff, in this action, who was a joint defendant in execution with his vendor, was also entitled, from the time of his purchase, to claim the statute exemption ; for it seems, that neither of them had *any work horse, mule, or other pair of oxen.* Each of them, so long as he was the proprietor of the oxen, could assert the right to hold them against a creditor. The plaintiff does not assert the privilege, to which his co-defendant was entitled, but has set up an exemption personal to himself and his family. This, we have seen, it is entirely competent for him to do, under the proof in the record. The ruling of the circuit court was adverse to these views—its judgment is therefore reversed, and the cause remanded.